UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 23-cv-21391-RLR

Yidareus T. McIntyre,
   *Plaintiff*,

  v.

Correctional Officer A. Vital, *et al.*,
   *Defendants*.
            /

## ALEX VITAL'S MOTION TO DISMISS
## THE SECOND AMENDED COMPLAINT

  Yidareus McIntyre claims that Alex Vital, a Miami-Dade County corrections officer, inflicted cruel and unusual punishment on him because he did not immediately provide him with medical attention when he asked for it. McIntyre never told Officer Vital *why* he needed medical care; he just demanded it. The standard to state a claim for a violation of the Constitution based on a delay of medical care is high, and McIntyre's bare allegations do not meet it. Officer Vital is entitled to qualified immunity from the claim, and as a result, the second amended complaint [ECF No. 11] should be dismissed.

## BACKGROUND

  On May 25, 2022, at approximately 2:00 a.m., while Yidareus McIntyre was housed in the Miami-Dade County Pretrial Detention Center, he was assaulted by three inmates. Second Am. Compl. 3. One of the three stabbed him. *Ibid*. McIntyre did not speak with any corrections officers about the incident until they came to serve breakfast later that morning. *Ibid*. At that time, he told officers merely that he was in fear for his life. *Ibid*. A corporal brought a set of inmate cards and asked him to pick out who he feared, but McIntyre could not identify anyone. *Ibid*.

  Fifteen minutes later, an officer McIntyre refers to as "Officer Marco"[1] took him to a different wing and handcuffed him to a bench. *Ibid*. Twenty minutes after that, Officer Vital

---

[1] Because "the information that has been provided by Plaintiff" thus far has been "insufficient to allow the U.S. Marshal to effectuate service upon Defendant Marco" this Court has ordered him to submit a notice

"made his check" in the area. *Ibid*. McIntyre told him that he "was in need of medical attention," and Officer Vital told him to wait. *Ibid*. When Officer Vital came by for the next check, McIntyre said a second time that he "need[ed] medical attention," and Officer Vital again told him to wait. *Id*. at 3–4. McIntyre continued to sit on the bench, all the while admittedly "not knowing [he] was suffering from internal bleeding." *Id*. at 4.

Ten minutes after the second exchange with Officer Vital, Officer Marco returned and escorted McIntyre to the elevator. *Ibid*. When he learned that he was being taken to a different housing location, not the clinic, he "began to argue with (Officer Marco) about [him] being in need of serious medical attention, that [he] was stabbed in the chest." *Ibid*. Officer Marco took McIntyre to the sixth floor, where McIntyre argued with him, another officer, and the "booth tech" about his "serious medical need." *Ibid*. Ten minutes later, a female officer took McIntyre to the clinic. *Ibid*. He was later transported to Jackson Memorial Hospital, where he underwent open heart surgery. *Id*. at 5.

✤✤

McIntyre initiated this action on April 12, 2023 [ECF No. 1]. Following two orders from this Court to amend [ECF Nos. 6 & 9], he filed the operative second amended complaint [ECF No. 11]. In it, he asserts claims pursuant to 42 U.S.C. § 1983 against Officer Vital and "Officer Marco" for deliberate indifference to his serious medical needs. Second Am. Compl. 2.

This Court screened the second amended complaint pursuant to 28 U.S.C. § 1915A and permitted it to proceed against Officer Vital and Officer Marco in their individual capacities [ECF No. 14]. Pertinently, the Court concluded that McIntyre had stated a plausible deliberate indifference claim against Officer Vital. It found that he "sufficiently alleges that Defendant Vital had subjective knowledge of a risk of serious harm because Plaintiff informed Defendant Vital twice that he needed medical attention, and Defendant Vital told Plaintiff to wait and took no actions to get him medical attention." *Id*. at 5.

Now that he has been served with the second amended complaint, Officer Vital moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss the claim against him.

---

"providing sufficient information on Marco to enable service of the Second Amended Complaint" by February 9, 2024. [ECF No. 24] at 2.

## LEGAL STANDARD

For a complaint to withstand a Rule 12(b)(6) motion, it "must state a claim for relief that is plausible, not merely possible." *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1260 (11th Cir. 2019) (en banc). A claim is "plausible" if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court considering a motion must accept well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff but cannot accept "conclusory allegations or legal conclusions." *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1261 (11th Cir. 2021).

## ARGUMENT

### Officer Vital Is Entitled to Qualified Immunity

The second amended complaint must be dismissed because Officer Vital is entitled to qualified immunity. Qualified immunity completely protects public officers "from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11 (2021) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The "central idea" of the defense "is this pragmatic one: officials can act without fear of harassing litigation only when they can reasonably anticipate—before they act or do not act—if their conduct will give rise to damage liability for them." *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013). Courts putting that pragmatic idea into effect have decided that "the 'breathing room' afforded by qualified immunity is generous; … 'it protects all but the plainly incompetent or those who knowingly violate the law.'" *Estate of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

"If a defendant advances the affirmative defense of qualified immunity, the district court must dismiss any claims that fail to allege a violation of clearly established law." *Ingram v. Kubik*, 30 F.4th 1241, 1250 (11th Cir. 2022). The only thing an officer seeking to avail himself of the defense must establish is that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Ibid*. Here, McIntyre claims that Officer Vital made "checks" in the jail and that he had a "p[ro]fessional duty" to inquire about his requests for medical care. Second Am. Compl. 3–4. This suffices to establish that

Officer Vital was acting within his discretionary authority at the time of his conduct. *See Howard v. Gee*, 538 F. App'x 884, 887 (11th Cir. 2013) (correctional officer was acting within his discretionary authority while supervising inmates).

From just that limited showing, a court is "*required* to grant qualified immunity," *Singletary v. Vargas*, 804 F.3d 1174, 1180 (11th Cir. 2015) (emphasis added), unless the plaintiff satisfies "the two-pronged qualified immunity standard: (1) the facts alleged in his complaint constitute a violation of his constitutional rights, and (2) the constitutional rights were 'clearly established' when the defendant committed the act complained of," *Morris v. Town of Lexington*, 748 F.3d 1316, 1322 (11th Cir. 2014). A court may consider the two prongs in any order, and "an official is entitled to qualified immunity if the plaintiff fails to establish either." *Piazza v. Jefferson County*, 923 F.3d 947, 951 (11th Cir. 2019); *see also Wilson v. Sec'y, Dep't of Corr.*, 54 F.4th 652, 660 (11th Cir. 2022) ("[I]t is not necessary to decide both prongs where it is plain that the right is not clearly established."). The second amended complaint fails to establish both prongs.

### A. The second amended complaint fails to plausibly allege that Officer Vital violated McIntyre's constitutional rights.

The Constitution "requires government officials to provide basic necessities, including medical care," to both pretrial detainees and convicted inmates. *Ireland v. Prummell*, 53 F.4th 1274, 1287 (11th Cir. 2022). A failure to provide care or to provide care in a timely manner violates the Constitution. *Ibid*. Prisoner claims alleging a delay in medical care are evaluated under the same standard regardless of a plaintiff's incarceration status. *Dang ex rel. Dang v. Sheriff of Seminole Cty.*, 871 F.3d 1272, 1279 (11th Cir. 2017).

To state a claim, the plaintiff "must satisfy both an objective and a subjective inquiry." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1270 (11th Cir. 2020). Satisfying the objective inquiry requires that the plaintiff demonstrate "an 'objectively serious medical need'—*i.e.*, 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Ibid.* (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)). In either case, the need must be "one that, if left unattended, poses a substantial risk of serious harm." *Ibid.* (quoting *Farrow*, 320 F.3d at 1243). To satisfy the subjective inquiry, the plaintiff must demonstrate that "prison officials 'acted with deliberate indifference to his serious medical need.'" *Ibid.*

(quoting *Harper v. Lawrence County*, 592 F.3d 1227, 1234 (11th Cir. 2010)). Deliberate indifference is comprised of three elements: the officials "(1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence." *Ibid.* (quoting *Harper*, 592 F.3d at 1234). Although Officer Vital concedes that a stabbing injury that ultimately required surgery satisfies the objective inquiry, the second amended complaint does not satisfy any of the three elements of the subjective inquiry.

*First*, Officer Vital did not have subjective knowledge of a risk of serious harm. An official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Officer Vital was not aware of *any* facts from which he could draw the requisite inference. McIntyre told Officer Vital two times that he needed medical attention—that's it. While he does allege that he told Officer Marco that he was stabbed in the chest, his pleading contains no allegation that he ever said anything about the attack or his injury to Officer Vital. *See Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) ("[I]mputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. Each individual [d]efendant must be judged separately and on the basis of what that person knows." (cleaned up)). More importantly, McIntyre admits that he himself didn't "know that [he] was suffering from internal bleeding" until *after* his interaction with Officer Vital; he "sat on the bench ... for an additional [ten] min[utes]" after they spoke the second (and final) time. Second Am. Compl. 4; *see Ireland*, 53 F.4th at 1296 (plaintiff failed to establish that corrections officers had subjective knowledge of risk of serious harm from chronic alcoholism because "only ... another inmate (not an officer) heard [plaintiff's] statement that [he] needed medical aid for his delirium tremens" and plaintiff "made the statement about five minutes before the officers arrived at [his] cell").

The only fact Officer Vital was aware of was that McIntyre requested medical attention. He did not have—and indeed, could not have had—subjective knowledge because he could not draw an inference from those bare requests that McIntyre faced a substantial risk of serious harm from a stab wound. Without any facts suggesting that Officer Vital "'had been exposed to information concerning the risk' of [McIntyre]'s condition and 'thus must have known about it,' such that [a court] can infer that [he] had 'actual knowledge of the

risk,'" McIntyre cannot satisfy this element. *Ireland*, 53 F.4th at 1296 (quoting *Farmer*, 611 U.S. at 842–43).

*Second*, Officer Vital did not disregard any risk of serious harm. He could not disregard a risk he had no knowledge of.

*Third*, Officer Vital did not act with more than gross negligence. The Eleventh Circuit has "been at pains to emphasize that 'the deliberate indifference standard is far more onerous than normal tort-based standards of conduct sounding in negligence,' and is in fact akin to 'subjective recklessness as used in the criminal law.'" *Swain v. Junior*, 961 F.3d 1276, 1288 (11th Cir. 2020) (cleaned up) (quoting *Goodman v. Kimbrough*, 718 F.3d 1325, 1332 (11th Cir. 2013), then *Farmer*, 511 U.S. at 839–40); *see also Hoffer*, 973 F.3d at 1271 ("We think it worth reiterating ... the stringency of the deliberate-indifference standard—because, it seems to us, the district court here lost track of it and impermissibly evaluated the Secretary's treatment plan against a negligence (or perhaps even more lenient) benchmark."). Telling a prisoner twice within a short period of time to wait to receive medical care is not conduct akin to criminal recklessness. If it were, then every correctional officer would have to take every prisoner to a clinic on demand or risk personal civil liability for violating constitutional rights. That is not the law. *Cf. Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 326 (2012) ("The difficulties of operating a detention center must not be underestimated by the courts. ... Maintaining safety and order at these institutions requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face.").

Moreover, McIntyre's allegation that Officer Vital "abandon[ed] his p[ro]fessional duty," Second Am. Compl. 4, by not inquiring into the reason why he was asking for medical attention does not change the conclusion that there is no constitutional violation. Whether Officer Vital would have learned of McIntyre's injury had he inquired further is irrelevant. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not meet the standard for deliberate indifference. *Farmer*, 511 U.S. at 838.

The second amended complaint does not demonstrate that Officer Vital violated any constitutional right.

### B. The second amended complaint fails to show that Officer Vital's conduct violated clearly established law.

Even if this Court rejects the argument that McIntyre has failed to state a plausible deliberate indifference claim, it should nevertheless grant qualified immunity to Officer Vital because the second amended complaint does not demonstrate that his conduct amounted to a clearly established violation of a constitutional right. "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014). "[T]he violative nature of [the officer]'s *particular* conduct" must be clearly established. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (cleaned up).

A plaintiff can show that a right was clearly established in three ways: (1) by "relying on a materially similar decision of the Supreme Court, of [the Eleventh Circuit], or of the supreme court of the state in which the case arose"; (2) by "invoking a broader, clearly established principle that controls the novel facts of the case"; or (3) by "persuading [the court] that the officer's acts so obviously violate the Constitution that prior case law is unnecessary." *Brooks v. Miller*, 78 F.4th 1267, 1280 (11th Cir. 2023) (cleaned up). "In all three methods, the salient question is whether the state of the law at the time of the incident gave the [officer] fair warning that his conduct was unlawful." *Powell v. Snook*, 25 F.4th 912, 920 (11th Cir. 2022) (cleaned up). McIntyre cannot satisfy any of the three.

Under the first method, a plaintiff "must point to a case, in existence at the time of the incident," in which an appropriate court "found a violation based on materially similar facts." *Baxter v. Roberts*, 54 F.4th 1241, 1263 (11th Cir. 2022) (cleaned up). The state of the law must "make[] it obvious that the officer's acts violated the plaintiff's rights in the specific set of circumstances at issue." *Garcia v. Casey*, 75 F.4th 1176, 1186 (11th Cir. 2023). McIntyre will be hard-pressed to find precedent holding that a corrections officer violates a prisoner's constitutional rights if he does not immediately take him to receive medical care when the prisoner requests it but does not tell the officer the *reason* for his request.

The second and third methods of demonstrating clearly established law are not available to McIntyre, either. Cases where they are applied are known as "'obvious clarity' cases." *King v. Pridmore*, 961 F.3d 1135, 1146 (11th Cir. 2020). "Obvious clarity is a narrow exception

… and such cases will be rare." *Wilson*, 54 F.4th at 663 (cleaned up); *see King*, 961 F.3d at 1146 ("[I]f a plaintiff cannot show that the law at issue was clearly established under the first (materially similar case on point) method, that usually means qualified immunity is appropriate."). These methods contemplate "a principle or provision so clear that, even without specific guidance from a decision involving materially similar facts, the unlawfulness of the officer's conduct is apparent." *Powell*, 25 F.4th at 920.

Falling within this narrow exception requires far more egregious conduct than what Officer Vital is alleged to have done. The obvious clarity exception is reserved for that small number of cases involving "depraved, inhumane" acts. *Gilmore v. Hodges*, 738 F.3d 266, 279 (11th Cir. 2013); *see Taylor v. Riojas*, 592 U.S. 7, 7–8 (2020) (plaintiff was confined in "shockingly unsanitary cells," one of which "was covered, nearly floor to ceiling, in massive amounts of feces" (cleaned up)); *Hope v. Pelzer*, 536 U.S. 730, 745 (2002) (plaintiff "was treated in a way antithetical to human dignity" when he was handcuffed to a post, shirtless and with his arms above his head, for seven hours in the sun with little water and no bathroom breaks while officers taunted him); *Brooks v. Warden*, 800 F.3d 1295, 1307 (11th Cir. 2015) (plaintiff who was handcuffed to a hospital bed was subjected to "an act of obvious cruelty" when he was forced to defecate into his jumpsuit and sit in his own feces for two days while officers laughed at and mocked him). Even if Officer Vital's conduct plausibly amounted to a constitutional violation, under no circumstances was it "so egregious that preexisting, fact-specific precedent was not necessary to give warning to every reasonable officer that what [he] was doing must be 'unreasonable' within the meaning of the [Eighth] Amendment." *Coffin v. Brandau*, 642 F.3d 999, 1015 (11th Cir. 2011) (en banc) (cleaned up). Officer Vital did not violate a clearly established constitutional right.

## CONCLUSION

Officer Vital is entitled to qualified immunity. Accordingly, this Court should dismiss the second amended complaint against him. And because the Court has already given McIntyre two opportunities to amend his pleading, dismissal should be with prejudice.

Dated: January 31, 2024.

Respectfully submitted,

Geraldine Bonzon Keenan
Miami-Dade County Attorney

By: */s/ Zach Vosseler*
    Zach Vosseler, Fla. Bar No. 1008856
    Assistant County Attorney
    Stephen P. Clark Center
    111 N.W. First Street, Suite 2810
    Miami, Florida 33128
    (305) 375-5151
    zach@miamidade.gov

*Counsel for Defendant Alex Vital*

## CERTIFICATE OF SERVICE

On January 31, 2024, at approximately 10:30 p.m., I electronically filed this document with the Clerk of Court via CM/ECF. Because the last mail pickup that day had already taken place, I served a copy via U.S. Mail the following day to

Yidareus T. McIntyre
Inmate No. S50859
South Florida Reception Center
Inmate Mail/Parcels
14000 N.W. 41st Street
Doral, Florida 33178

*Plaintiff, pro se.*

                */s/ Zach Vosseler*
                Zach Vosseler
                Assistant County Attorney