UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-21391-CIV-ROSENBERG/REID

YIDAREUS T. MCINTYRE,

     Plaintiff,

v.

CORRECTIONAL OFFICER A. VITAL, *et al.*,

     Defendants.

_____/

## ORDER GRANTING DEFENDANT'S
## MOTION FOR JUDGMENT ON THE PLEADINGS

**THIS CAUSE** comes before the Court on Defendant Victor Marc's ("Defendant") Motion for Judgment on the Pleadings ("Motion") [ECF No. 51].   Defendant argues that Plaintiff failed to exhaust his administrative remedies to his claims at issue as required under the Prison Litigation Reform Act (PLRA), and therefore Defendant is entitled to judgment in his favor under Federal Rule of Civil Procedure 12(c).   Plaintiff filed an untimely Response on October 28, 2024 [ECF No. 62].   The Court has reviewed the Motion, the Response, the supporting exhibits, and the record in this case.   For the following reasons, Defendant's Motion is **GRANTED**.

## BACKGROUND

This Court received and docketed Plaintiff's original complaint in this action on April 12, 2023 [ECF No. 1].   On June 12, 2023, the Court entered a screening order dismissing Plaintiff's original complaint due to procedural and substantive deficiencies and allowed him to file an Amended Complaint [ECF No. 6].   The Court received Plaintiff's Amended Complaint on June 29, 2023 [ECF No. 8].   On August 11, 2023, the Court, after screening the Amended Complaint, entered an Order notifying Plaintiff that the Amended Complaint failed to cure the deficiencies

identified by the Court, but granting Plaintiff one final opportunity to amend due to the serious nature of Plaintiff's allegations and his status as a *pro se* litigant [ECF No. 9].  The Court received Plaintiff's operative Second Amended Complaint (the "Complaint") on August 30, 2023 [ECF No. 11].  The Complaint alleged that on May 25, 2022, Plaintiff was stabbed by a fellow inmate at the Miami-Dade County Pre-Trial Detention Center, and the Defendants shackled him to a bench and ignored Plaintiff's repeated requests for medical attention before another officer finally took Plaintiff to the jail clinic for medical attention [ECF No. 11 pp. 2–5].  The Court screened the Complaint and allowed it to proceed in part, finding that Plaintiff had plausibly alleged deliberate indifference to his serious medical needs by two Defendants: Officer Vital, and Defendant (originally identified as "Marco") [ECF No. 14 pp. 4–8].

On January 31, 2024, Officer Vital filed a Motion to Dismiss [ECF No. 14], which the Court granted on February 23, 2024 [ECF No. 27].  Officer Marc ("Defendant"), the sole remaining Defendant in this case, was identified and served on June 26, 2024 [ECF No. 46].  On September 17, 2024, Defendant filed the Motion at issue [ECF No. 51].  Defendant argues that Plaintiff did not appeal the denial of the grievance he filed regarding his claim as required by the PLRA, and therefore Plaintiff failed to exhaust his administrative remedies [ECF No. 51 pp. 2–7].  On September 18, 2024, the Court notified Plaintiff of his right to file affidavits and other materials in support of his response to Defendant's Motion [ECF No. 54].  On October 28, 2024, Plaintiff signed and filed his Response to Defendant's Motion [ECF No. 62], untimely under Local Rule 7.1(c)(1).  *See* S.D. Fla. L.R. 7.1(c)(1).  Plaintiff's Response, which includes no additional supportive materials, asserts that the PLRA does not apply to Plaintiff because he was in the county jail, and "not a prisoner" [ECF No. 62 p. 1].  The matter is ripe for review.

## LEGAL STANDARDS

### I.        Exhaustion of Administrative Remedies under the PLRA

The PLRA forbids suits by prisoners "with respect to prison conditions" under any federal law, including section 1983, "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524 (2002). "[T]he PLRA's exhaustion requirement applies to inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. The requirement is mandatory, and courts have no discretion to waive it. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). The PLRA requires "proper exhaustion," meaning the prisoner must "us[e] all steps" in the administrative process and "compl[y] with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006); *see also Bryant v. Rich*, 530 F.3d 1368, 1378 (11th Cir. 2008) (quoting *Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005)) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'").

The only exception to the PLRA's exhaustion requirement "is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Ross v. Blake*, 578 U.S. 632, 648 (2016). Administrative remedies are "unavailable" in three circumstances: (1) when the procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process though machination, misrepresentation, or intimidation." *Varner v. Shepard*, 11 F.4th 1252, 1258 (11th Cir. 2021) (quoting *Ross*, 578 U.S.

at 643–44).  "Exhaustion of administrative remedies is an affirmative defense that must be proved by the defendants; a plaintiff need not 'specially plead or demonstrate exhaustion in [his] complaint.'"  *Maldonado v. Baker Cnty. Sheriff's Off.*, 23 F.4th 1299, 1307 (11th Cir. 2022) (quoting *Jones v. Bock*, 549 U.S. 199, 217 (2007)).  When failure to exhaust is raised after the motion-to-dismiss stage, "it should be treated as if the argument was 'raised in a motion to dismiss.'" *Sims v. Sec'y, Fla. Dep't of Cor.*, 75 F.4th 1224, 1229 n.3 (11th Cir. 2023) (quoting *Bryant*, 530 F.3d at 1375).

## II.     The *Turner* Two-Step Analysis

In *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008), the Eleventh Circuit established a two-step framework for resolving questions of exhaustion.  "First, the court looks to the factual allegations in the defendant's motion [ ] and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." *Id*. at 1082.  "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*.  "This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c)." *Id*.

Second, "[i]f the complaint is not subject to dismissal at the first step . . . the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id*.  In so doing, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." *Bryant*, 530 F.3d at 1376 (citations omitted).  Courts may weigh the evidence and make credibility determinations at step two. *See Whatley v. Smith* ("*Whatley II*"), 898 F.3d 1072, 1083 (11th Cir. 2018) (citations omitted).  "Once

the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Turner*, 541 F.3d at 1083.

## DISCUSSION

### I.   Miami-Dade Corrections and Rehabilitation Department's Grievance Procedures

The requirements for Plaintiff to exhaust his administrative remedies for the claims in this case are set forth in the Miami-Dade Corrections and Rehabilitation Department's ("MDCR") Standard Operating Procedures ("SOP") [Def's Att. 1, ECF No. 51-1] and the MDCR's Inmate Handbook [Def's Att. 2, ECF No. 51-2].   Plaintiff was familiar with these procedures, as demonstrated by his June 7, 2021 signed acknowledgment of his receipt of the Inmate Handbook and the requirement that he comply with the rules and regulations therein [Def's Att. 3, ECF No. 51-3], and his July 7, 2022 filing of a grievance related to the claims in this case [Def's Att. 4, ECF No. 51-4 pp. 4–5].

Volume 15 of the MDCR's SOP outlines the process for completion of the grievance process for all MDCR inmates [Def's Att. 1, ECF No. 51-1].   Inmates seeking to grieve must first complete an Inmate Grievance Form, available to inmates in all housing areas in English, Spanish, and Creole, and place it into any inmate request drop box within 10 calendar days from the date of the incident, unless the inmate is grieving of sexual battery, sexual abuse, and/or sexual harassment, for which there is no time limit [Def's Att. 1, ECF No. 51-1 p. 2].   When responding to grievances in writing, the appropriate prison officials are required to restate or summarize the concern or issue, and provide a detailed response [Def's Att. 1, ECF No. 51-1 p. 5].   Inmates have the right to appeal a grievance response; however, an inmate that has signed and accepted a grievance resolution cannot appeal the response at a later date [Def's Att. 1, ECF No. 51-1 p. 6]. Inmate Grievance Response Appeal forms are accessible to all inmates in all housing units and

must be completed and placed in an inmate request drop box within two calendar days from the receipt of the grievance response [Def's Att. 1, ECF No. 51-1 p. 7].  "The respective Division Chief or the IMP Director shall provide a response to the inmate grievance appeal within seven calendar days of receiving [it]," and the decision in that response is final [Def's Att. 1, ECF No. 51-1 p. 7].

The procedures described in the MDCR's SOP are described for inmates in the Inmate Handbook [Def's Att. 2, ECF No. 51-2 pp. 17–18].  The Inmate Handbook advises inmates of the process for filling out an Inmate Grievance Form, how the grievance will be dealt with subsequently, and when to expect a response/resolution [Def's Att. 2, ECF No. 51-2 pp. 17–18]. The Inmate Handbook explicitly states that if an inmate signs and accepts a grievance resolution, the inmate may not appeal at a later time, and that inmates may reject such resolutions and/or request an appeal if they do not agree with them [Def's Att. 2, ECF No. 51-2 p. 18].  The Inmate Handbook specifies that grievance response appeal decisions are "final" [Def's Att. 2, ECF No. 51-2 p. 18].

## II.     *Turner* Step One

Defendant's Motion may be disposed of at Step One of the *Turner* analysis.  Even if the Court were to accept Plaintiff's untimely Response [ECF No. 62] as timely, it is clear from the facts alleged in Defendant's Motion and Plaintiff's Response that the Complaint is subject to dismissal for failure to exhaust administrative remedies.  At Step One, the Court must determine whether, as a matter of law, Plaintiff was required to appeal the response to his grievance to properly exhaust his administrative remedies.  Because he was, and demonstrably omitted to do so, the Court grants Defendant's Motion.

As an initial matter, Plaintiff's assertion that the PLRA does not apply to him because he was in a county jail and not a "prison" is refuted by the PLRA's plain text.  As used in the PLRA, a "prisoner" is defined as "any person incarcerated *or detained* in any facility who is *accused of*, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997(h) (emphasis added).  Plaintiff, as a detainee at a pretrial detention center, falls squarely within that definition, and is bound by the PLRA's exhaustion requirements.

The Eleventh Circuit has held that to exhaust administrative remedies under the PLRA, "prisoners must properly take each step within the administrative process," which means that "[i]f their initial grievance is denied, prisoners must then file a timely appeal." *Bryant*, 530 F.3d at 1378 (internal quotations omitted).

Plaintiff's only factual allegation regarding the grievance process for his claim is that he failed to file his grievance within 10 days of the incident as required by the Inmate Handbook because he was in the hospital immediately after the incident [ECF No. 62 p. 1].  However, Defendant does not argue that Plaintiff failed to exhaust his administrative remedies by failing to file a timely grievance, but rather by failing to appeal the response as required by the MDCR's SOP and the Inmate Handbook.  Defendant's Motion includes an attached Declaration from Reynaldo Romero, a MDCR Inmate Services Administrator [Def's Att. 4, ECF No. 51-4 pp. 1–2]. Romero attests that Plaintiff filed a grievance claiming insufficient attendance to his medical needs following a stabbing, that the facility provided a response denial following proper procedures [Def's Att. 4, ECF No. 51-4 p. 1].  Romero further attests that Plaintiff checked the box marked "Accepted (Resolved)," rather than "Accepted (Unresolved)," or "Appeal," and signed and dated the response form [Def's Att. 4, ECF No. 51-4 p. 1].  Romero concludes that a review of Plaintiff's

records indicates that he did not file any appeal of the denied grievance [Def's Att. 4, ECF No. 51-4 p. 2]. Defendant's Motion also includes attached copies of the grievance documents themselves, which show Plaintiff's signature, dated July 19, 2022, on the grievance response form with the "Accepted (Resolved)" box checked [Def's Att. 4 ECF No. 51-4 pp. 4–5].

Even Plaintiff's untimely Response [ECF No. 62] therefore presents no factual conflict with Defendant's Motion and attachments. The record shows that Plaintiff filed a grievance, received a procedurally proper response from the MDCR, and declined to reject or appeal that response as required by the MDCR's SOP and the Inmate Handbook. Therefore, Plaintiff failed to properly exhaust his administrative remedies, and is barred from bringing this action by the PLRA. Accordingly, Defendant's Motion for Judgment on the Pleadings must be **GRANTED**. Because such a motion is properly treated as a Motion to Dismiss, *Sims*, 75 F.4th at 1229 n.3, the Court therefore **DISMISSES** Plaintiff's Complaint [ECF No. 11].

### III.   Dismissal With or Without Prejudice

One final matter is whether to dismiss this action with or without prejudice. In *Bryant*, the Eleventh Circuit noted in a footnote that dismissal with prejudice for failure to exhaust is appropriate where "administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust." *Bryant*, 530 F.3d at 1375 n.11 (citing *Berry v. Kerik*, 366 F.3d 85 (2d Cir. 2004)). The court cautioned, however, that administrative remedies must be "absolutely time barred or otherwise clearly infeasible." *Id.* Here, Plaintiff has completed the grievance process and accepted the MDCR's resolution of his claim, precluding any further process of administrative resolution. Further, over two years have elapsed since the underlying complained-of incident occurred, and because Plaintiff's complaint was not of sexual battery, sexual abuse, and/or sexual harassment, he would

be time barred from bringing a new grievance under the MDCR's SOP [Def's Att. 1, ECF No. 51-1 pp. 2, 6]. Thus, his administrative remedies have become "clearly infeasible" and dismissal with prejudice is appropriate. *Id.*; *see also Berry*, 366 F.3d at 88 (concluding that inmate's "failure to pursue administrative remedies while they were available precluded his federal lawsuits, and they were properly dismissed with prejudice"); *Donahue v. Wilder*, 824 F. App'x 261, 267 (5th Cir. 2020) ("Failure to exhaust usually results in a dismissal without prejudice, but with prejudice dismissal is warranted when it is too late for the plaintiff to exhaust"); but see *Ford v. Johnson*, 362 F.3d 395, 400–01 (7th Cir. 2004) (noting that a PLRA dismissal with prejudice is unnecessary because "[i]f it is too late to pursue administrative remedies, then exhaustion will prove impossible and § 1997e(a) will permanently block litigation").

## CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that:

1. Defendant's Motion for Judgment on the Pleadings [ECF No. 51] is **GRANTED**.

2. Plaintiff's Second Amended Complaint [ECF No. 11] is **DISMISSED with prejudice**.

3. All pending motions are **DENIED as MOOT**.

4. The Clerk is directed to **MAIL** a copy of this Order to Plaintiff at the below address.

5. The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 24th day of January, 2025.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

cc:

**Yidareus T. McIntyre,** *pro se*
S50859
Martin Correctional Institution
Inmate Mail/Parcels
1150 SW Allapattah Road
Indiantown, FL 34956